IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

NFS HOLDINGS, INC.,

                Plaintiff,           Case No. 3:99 CV 7457

-vs-

                                      MEMORANDUM OPINION
IVAN TENNYSON, et al.,           AND ORDER

                Defendant.

KATZ, J.

      Before the Court is the Defendant Ivan Tennyson's, (hereinafter "Tennyson") amended motion for assessment of attorneys' fees and costs. (Doc. No. 271). The parties have filed multiple memoranda, affidavits and related documents in support of their respective positions. After a thorough review of the long and tortured history of this case, both before this Court, the Court of Appeals and in the Florida state court, this Court has reached the conclusion that neither position espoused by the parties is persuasive.

      The history of the contractual relationship between the parties has been set out in the memoranda filed by the parties, and the Court will not reiterate that history here. Suffice to say that the parties entered into contractual arrangements pursuant to which the Plaintiff acquired the Florida operations of the Defendant. After a period of time following "closing," the Plaintiff attempted to achieve an inventory

count, financial data, etc. Ultimately, the Plaintiff filed suit in this Court alleging, among other things, multiple counts of fraud, securities fraud, breach of contract, indemnification and other counts as well as seeking injunctive relief and rescission. At roughly the same time, the Plaintiffs acquired entity, Executive Wings, Inc., defaulted under a promissory note issued to Tennyson and arising out of the transaction described above. Tennyson filed an action in Florida state court seeking the principle sum of $303,900 plus interest and attorneys fees. (The parties do not contest the validity of the promissory note or the fee shifting agreement within that note; only the amount of attorneys fees and costs attributable to the collection of the promissory note is at issue here).

Ultimately, this Court stayed the Florida state action in light of the pendency of the transactional issues before this Court. Clearly, it was this Court's feeling that the parties need not engage in the cost of multiple actions; the action on the promissory note involved a dollar amount significantly less than the amount at issue in the primary case filed in this Court. While this Court characterized the action on the promissory note as "inextricably intertwined" with the action already in this Court, it is clear that the action on the note was the proverbial tail wagging the dog, not vice versa.

The Defendant characterizes this Court's statement that the issue on the note was inextricably intertwined with the balance of the case as justification for collection of over $1 million in fees and costs. This Court strenuously disagrees. The Defendant wanted to pursue the note separately in the Florida state court, while the Plaintiff wished to proceed on the nine causes of action in this Court, all of which arose out of the unhappiness of the Plaintiff with the representations made contractually by the Defendant. The Defendant would have had to defend the case in chief here irrespective of whether the note issue was pursued in Florida or as a part, a very small part, of this case.

The Court, having read all of the cases cited by the parties, does not find them persuasive in supporting the Defendant's position. The attorney fees and costs incurred in the basic case filed in this Court would have been incurred irrespective of the promissory note collection issue. In effect, the promissory note became a matter of offset against any claim the Plaintiff recovered upon in the primary action. From a standpoint of justification of the costs of pursuing collection of the promissory note, the Defendant is entitled only to a reasonable amount of fees and expenses attributable to the collection of the promissory note.

The Court has carefully reviewed the tables showing the number of actions upon which each party prevailed, the dollar implications of same, etc. Plaintiffs were seeking damages totaling more than $3.8 million for breach of contract, approximately $4.8 million for various fraud and securities violations or in the alternative rescission damages of over $6.4 million. Clearly, the judgment which this Court rendered and which was affirmed by the Court of Appeals for the Sixth Circuit, fell far short of that goal. That does not mean, however, that the six counts this Court ruled in favor of Tennyson justify awarding attorneys fees in the amounts sought. Mr. Tennyson would have incurred those fees irrespective of the promissory note which arose out of the basic transaction, and would not have involved fee shifting.

The language of the promissory note. to wit: "If any payment obligation under this Note is not paid when due, the Borrower promises to pay all costs of collection, including reasonable attorneys fees * * *" controls this Court's decision.

Reasonable attorneys fees as calculated by this Court on collection of the promissory note means just that, reasonable attorneys fees. Those attorneys fees attributable to the promissory note are separate and apart from the rest of the case. As noted above, it is clear to this Court that the financial interests of

3

Mr. Tennyson in protecting the sanctity of the contractual agreements made at time of the sale of Executive Wings demanded that he defend the action filed by the Plaintiff in this Court. The defense of that action clearly is separate from "collection efforts" with respect to the promissory note, even though the litigatin of both occurred here. There was no need for the Defendant to "prove" the viability of the note; all significant issues at trial involved the basic transaction, the issues of accounting and inventory, securities fraud, etc.

In light of the above, this Court determines that the most which the Defendant is entitled to receive would be a contingent fee for collection of the promissory note or $101,300 plus $4,000 in costs, which amount of costs is merely a fairness estimation by this Court and not tied to any specific costs incurred. Had a separate suit been maintained as the Defendant sought, it would be inconceivable that the costs attributable to that action would exceed roughly $4,000.

Therefore, the Court awards the Defendant attorney fees of $101,300 and costs of $4,000 or a total judgment on attorneys fees and costs of $105,300.

IT IS SO ORDERED.

               s/ *David A. Katz*
               DAVID A. KATZ
               SENIOR U. S. DISTRICT JUDGE